IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| MEGAN B.,[1] | : | Case No. 1:22-cv-00296 |
| Plaintiff, | : : | Magistrate Judge Caroline H. Gentry |
| vs. | : : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : : | |
| Defendant. | : | |

**DECISION AND ORDER**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in July 2019. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, an Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

I.  **BACKGROUND**

Plaintiff asserts that she has been under a disability since June 9, 2019.[2] At that time, she was thirty-nine years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[3] Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," ECF No. 7) is summarized in the ALJ's decision (AR, ECF No. 7-2 at PageID 35-52), Plaintiff's Statement of Errors ("SE," ECF No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," ECF No. 10), and Plaintiff's Reply Memorandum ("Reply," ECF No. 11). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

II. **STANDARD OF REVIEW**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] Plaintiff initially alleged that her disability began on November 20, 2014, but she subsequently amended the alleged disability onset date to June 9, 2019. (AR, ECF No. 7-5 at PageID 249.)

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.  FACTS

### A.  The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

> Step 1:  Plaintiff has not engaged in substantial gainful activity since June 9, 2019, the amended alleged onset date.
>
> Step 2:  She has the severe impairments of osteoarthrosis, depressive and bipolar related disorders, inflammatory arthritis, ankylosing spondylitis, disorder of the back, fibromyalgia, sleep-related breathing disorders, anxiety and obsessive-compulsive disorder; and migraines.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "she is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently; able to stand and/or walk 6 hours per 8 hour day and sit 6 hours per 8 hour day with normal breaks. She can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; [s]he can frequently balance and occasionally stoop, kneel, crouch and crawl. She can perform frequent handling and fingering bilaterally. She is able to perform occasional extension of the neck, meaning able to bend head backwards as in looking up towards the ceiling. She must avoid concentrated exposure to extreme cold and vibration. She must avoid all exposure to hazards of unprotected heights of ladders, ropes or scaffolds and operating dangerous heavy moving machinery. She can understand, remember and carry out simple instructions and detailed instructions but no complex instructions. She can sustain attention, concentration and maintain persistence and pace to complete simple tasks and detailed tasks with no fast-paced production requirements. She can adapt to a work environment where major changes are explained in advance to allow for adjustment to new expectations with no requirement for strict time limitations or production standards such as an automated assembly line."

She is capable of performing her past relevant work as a loss mitigation specialist.

Step 5: Even without considering past relevant work, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(AR, ECF No. 7-2 at PageID 37-52.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 52.)

### B. Treating Psychiatrist Kevin Eggerman, M.D.

Dr. Eggerman completed a mental capacities assessment form in November 2019. (AR, ECF No. 7-13 at PageID 3031-33.) Dr. Eggerman opined that Plaintiff was markedly limited in several areas of work-related mental functioning: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination with or in proximity to others without being distracted by them; interacting appropriately with the general public; completing a normal workday and workweek without interruptions from psychologically-based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. (*Id.* at PageID 3031-32.)

In addition, Dr. Eggerman opined that Plaintiff was moderately limited in numerous areas of work-related mental functioning: remembering locations and work-like procedures; understanding, remembering, and carrying out very short and simple instructions; making simple, work-related decisions; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; responding appropriately to changes in the work setting; being aware of normal hazards and taking appropriate precautions; traveling in unfamiliar places and using public transportation; setting realistic goals; and making plans independently of others. (*Id.*) Dr.

6

Eggerman found no significant limitation in Plaintiff's ability to sustain an ordinary routine without special supervision. (*Id.* at PageID 3031.)

Dr. Eggerman explained that Plaintiff suffered from a moderately-severe mood disorder which had only partially responded to aggressive treatment. (*Id.* at PageID 3033.) He further noted that Plaintiff's mood remained unstable and that her ability to relate effectively with others was "markedly impaired and overall poor." (*Id.*)

The ALJ concluded that Dr. Eggerman's opinion was "not persuasive." (AR, ECF No. 7-2 at PageID 50.) The ALJ explained:

> This opinion was not persuasive because it overstates [Plaintiff's] limitations and is inconsistent with other evidence. [Plaintiff] had varying, but at times normal, mental status exam findings. For example, she was typically noted with a depressed mood but other mental status findings were normal (13F/10-13, 19F/17). However, at the hearing she reported improvement with her depression (testimony). Dr. Eggman [sic] opinion is inconsistent with his own treatment notes finding [Plaintiff] to have an estimated average IQ (39F/5, 10) and she typically presented as cooperative (see 11F, e.g.). [Plaintiff] testified that her depression is better than it has ever been, her medication helps and she feels better than she ever did. She also reported engaging in activities that suggest she is not quite as limited as alleged, including going out with friends for dessert, riding a Ferris wheel downtown, shopping online, and preparing simple meals (testimony, 4E). [Plaintiff] testified she has no problems getting along with her parents, children and doctors. She uses the computer to shop online, engage in social media and uses her cell phone to access the Internet to engage in research (testimony).
>
> Moreover, Dr. Eggerman [sic] opinion is inconsistent with his own May 2020 treatment records of of [sic] [Plaintiff's] reported abilities to be a peacekeeper in her family, report that she is very happy dating a man she met through her ex husband and her depression is related to her son moving to Colorado "empty nest" but doing pretty well from a psychiatric perspective, and that she remains improved, feels improved with Abilify, improved with Topamax [sic] (9F/2, 3). In January and February 2020 other treatment provider examinations found [Plaintiff] alert and oriented times 3 (36F/5, 11). [Plaintiff] testified that she did receive treatment from

>Dr. Kevin Eggerman. Further, she testified that her mental health medications help because prior to taking medication she was not getting out of the bed for quite a while; however, now she gets out of bed and feels better than she did. She also testified that her depression is better than it has ever been (testimony).

(*Id.*)

### C. Primary Care Physician Daniel Silvestri, M.D.

Dr. Silvestri completed a Physical Medical Opinion form in October 2019. (AR, ECF No. 7-13 at PageID 2997-3001.) Dr. Silvestri opined that Plaintiff could stand for fifteen minutes at a time and for less than a total of two hours in an eight-hour workday, walk for less than one block and for less than a total of two hours per day, and sit for thirty minutes at a time and for a total of approximately four hours per day. (*Id.* at PageID 2998.) He noted that Plaintiff needed to shift positions at will and would need to take unscheduled, fifteen-minute-long breaks approximately once or twice per day. (*Id.*) Dr. Silvestri opined that Plaintiff could lift and carry no more than ten pounds occasionally and was unable to lift and carry any significant amount of weight on a frequent basis. (*Id.* at PageID 2999.) He also opined that Plaintiff could occasionally climb stairs, rarely twist, and never crouch, squat, climb ladders, or stoop (bend). (*Id.*) According to Dr. Silvestri, Plaintiff was capable of "moderate stress – normal work" but would likely be off task (defined as experiencing symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks) for fifteen percent of the workday. (*Id.* at PageID 3000.) He further opined that Plaintiff would likely miss work more than four times per month. (*Id.*)

The ALJ concluded that Dr. Silvestri's opinion was "not persuasive." (AR, ECF No. 7-2 at PageID 47.) The ALJ explained:

> This opinion was not persuasive because it is inconsistent with other evidence and overstates [Plaintiff's] limitations. She underwent RFTC bilateral and ESI cervical and reported 70-75% improvement of cervical pain, improved range of motion post intervention and good pain relief (18F/10). [Plaintiff] had varying, though at times normal, physical exam findings. She was prescribed methadone (36F/1). The pain medication helped with her pain [sic] allows her to function with her activities of daily living (36F/1). [Plaintiff] was noted to report that the medication provides good analgesia, helps her remain functional in activities of daily living and thus improve quality of life and helps control the pain (36F/1). She stated she still had pain in her back, skull, hips, toes, knees, jaw, shoulders, and wrists. She added that she was off her medications for a few months while caring for her son in Colorado (33F/34). At a primary care physician exam, [Plaintiff] her [sic] gait was slow but stable and she remains functional in activities of daily living and thus improves the quality of life (36F/7). Her sensory and motor function was intact throughout (36F/5). It was also noted that medications help with the pain without any side effects and allows [sic] [Plaintiff] to perform activities of daily living (36F/6). Again, treatment records indicated her gait was slow but stable and medications help with the pain without any side effects and allows [sic] [Plaintiff] to perform activities of daily living (36F/13). For example, one June exam had normal findings, while another noted she appeared stiff and her neck range of motion was limited (15F/46-48, 255-259). More recently, one occasion physical exam findings were unremarkable, including a normal musculoskeletal range of motion (45F/7) but shortly thereafter a separate exam noted multiple tender points and reduced neck range of motion (48F/12). In addition, there is no medical imaging of the spine from after the alleged onset date but prior findings were largely mild (7F/2). She testified that Leflunomide treats her inflammatory arthritis by helping the smaller joints of her fingers such that they do not ache and throb is [sic] much as they used to and her toes are no longer a problem. These findings do not support the extreme limitations posited by Dr. Silverstri [sic].

(*Id.* at PageID 47-48.)

IV.   **LAW AND ANALYSIS**

Plaintiff contends that the ALJ failed to properly evaluate and account for the opinions of treating physician Dr. Silvestri and treating psychiatrist Dr. Eggerman. (SE, ECF No. 9 at PageID 4167-73.) Finding error in the ALJ's evaluation of Dr. Eggerman's opinion, the Court does not address the analysis of Dr. Silvestri's opinion and, instead, instructs the ALJ to address both opinions on remand.

   A.   **Applicable Law**

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and

(5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors—supportability and consistency—are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[4] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

### B. The ALJ's Findings Regarding Dr. Eggerman's Opinion Are Not Supported by Substantial Evidence.

The ALJ found Dr. Eggerman's opinions to be unpersuasive because they were "inconsistent with other evidence" and "inconsistent with his own treatment notes . . . ." (AR, ECF No. 7-2 at PageID 50.)[5] In support of this conclusion, the ALJ cited a few

---

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

[5] The supportability factor requires consideration of the "objective medical evidence and supporting explanations *presented by a medical source* . . . ." 20 C.F.R. § 404.1520c(c)(1) (emphasis added). By contrast, "consistency" involves comparing a medical opinion or prior administrative medical finding with "*the evidence from other medical sources and nonmedical sources* in the claim." 20 C.F.R. § 416.920c(c)(2) (emphasis added). The ALJ appears to have conflated these terms when discussing Dr. Eggerman's findings and treatment records. Nevertheless, the ALJ addressed both factors because she considered the objective findings documented by Dr. Eggerman, as well as other medical and non-medical evidence of record.

11

mental status examinations, Plaintiff's response to treatment, and Plaintiff's reports of daily activities. (*Id.*) The Court finds that the ALJ erred by ignoring evidence and mischaracterizing the record. Therefore, her findings are not supported by substantial evidence and reversal is required.

  The ALJ cited to treatment notes from Dr. Eggerman and Plaintiff's therapist to support her conclusion that that Dr. Eggerman's opinion was not persuasive: "[Plaintiff] had varying, but at times normal, mental status exam findings. For example, she was typically noted with a depressed mood but other mental status findings were normal (13F/10-13, 19F/17)." (AR, ECF No. 7-2 at PageID 50.) Yet these examinations occurred in May 2019, approximately one month ***prior to*** the amended alleged disability onset date. (AR, ECF No. 7-9 at PageID 1134; AR, ECF No. 7-12 at PageID 2866.) Moreover, contrary to the ALJ's description, the other mental status findings that Dr. Eggerman documented in these notes were ***not*** normal. For example, Dr. Eggerman documented an anxious and tense presentation, tearfulness, a reduced range of affect, some slowing, and some increased latency response. (*Id.* at PageID 1134-35.) The ALJ's mischaracterization of these notes demonstrates that her conclusion is not supported by substantial evidence.

  The ALJ further explained: "Dr. Eggman [sic] opinion is inconsistent with his own treatment notes finding the claimant to have an estimated average IQ (39F/5, 10) and she typically presented as cooperative (see 11F, e.g.) . . . Moreover, Dr. Eggerman opinion is inconsistent with his own May 2020 treatment records of of [sic] [Plaintiff's] reported abilities to be a peacekeeper in her family, report that she is very happy dating a man she met through her ex husband and her depression is related to her son moving to Colorado

12

"empty nest" [sic] but doing pretty well from a psychiatric perspective, and that she remains improved, feels improved with Abilify, [and] improved with Topamax (9F/2, 3)."[6] (AR, ECF No. 7-2 at PageID 50.)

This explanation is similarly unsupported by substantial evidence. The ALJ cited only the normal mental status findings that Dr. Eggerman documented, and ignored the fact that Dr. Eggerman consistently documented abnormalities that included an anxious and tense presentation, a reduced range of affect, some slowed responses, tearfulness, frustration, and increased depressive behaviors ***during nearly every examination since the amended alleged onset date***. (AR, ECF No. 7-9 at PageID 1126-27, 1130-31; AR, ECF No. 7-12 at PageID 2863; AR, ECF No. 7-13 at PageID 3214, 3218; AR, ECF No. 7-14 at 3783, 3788.) The ALJ also ignored Dr. Eggerman's statements that Plaintiff "suffers from a moderately-severe major mood disorder which has only partially responded to [aggressive] treatment," that Plaintiff's mood remained "unstable," and that her ability to relate effectively with others was "markedly impaired and overall poor." (AR, ECF No. 7-13 at PageID 3033.) The fact that the ALJ ignored all of this evidence contradicts and undermines her conclusions regarding Dr. Eggerman's medical opinion.

The ALJ also erred by relying upon her own mischaracterizations of Plaintiff's statements to Dr. Eggerman. Contrary to the ALJ's description of Plaintiff's "abilities" to be a peacekeeper, Dr. Eggerman noted in May 2020 that Plaintiff was "struggling" and

---

[6] The ALJ cited to Exhibit 9F, but this record documents an esophagogastroduodenoscopy procedure and pathology report, not Dr. Eggerman's records. Dr. Eggerman's May 2020 treatment notes are found at Exhibit 39F. (AR, ECF No. 7-14 at PageID 3780-84.)

13

was "in triangulation" as the "chronic peacekeeper" between her husband and son. (AR, ECF No. 7-14 at 3780.) Plaintiff said this dynamic led her "to feel never good enough." (*Id.*) Additionally, Dr. Eggerman's reference to Plaintiff's statement that "she is very happy dating" is found in the history section of his May 2020 notes (indicated by "hx"). (*Id.* at PageID 3781.) Plaintiff actually reported being "very happy dating" her partner well over a year earlier in February 2019—several months prior to the amended alleged onset date. (AR, ECF No. 7-9 at PageID 1144.) Significantly, Plaintiff later complained repeatedly about this relationship. For example, in June 2019 Plaintiff stated that she "threw [her partner] out of the house for a few days" when he started drinking alcohol. (AR, ECF No. 7-8 at PageID 1019.) In August 2019, Plaintiff expressed "concerns related to her fiancé's continued drinking and his stopping going to AA meetings," as well as his continued conversations with an ex-girlfriend. (AR, ECF No. 7-14 at PageID 3759.) She stated in October 2019 that she and her husband were arguing 'because of her increased impulsivity—particularly around spending money' and that her husband had "fall[en] off the wagon" again." (AR, ECF No. 7-13 at PageID 3140.) Plaintiff testified in November 2020 that she was separated from her husband. (AR, ECF No. 7-2 at PageID 82.) These significant events are wholly unaccounted for in the ALJ's analysis and refute her conclusion that Plaintiff was "happy dating." (AR, ECF No. 7-2 at PageID 50.)

Similarly, Dr. Eggerman's notations that Plaintiff was "doing pretty well from a psychiatric perspective" and that she "remains improved, feels improved with Abilify, improved with Topamax [sic]" are also found in the history section of Dr. Eggerman's May 2020 notes. (AR, ECF No. 7-14 at PageID 3781.) These statements do not describe

14

Plaintiff's functioning as of May 2020.[7] To the contrary, Dr. Eggerman noted that Plaintiff was "struggling" and reported that the mental status examination showed abnormalities which included an anxious and tense presentation, a reduced range of affect, some slowing, tearfulness, frustration, and depression. (*Id.* at PageID 3783.) The ALJ erred by relying on historical, rather than temporally relevant, information.

The ALJ also mischaracterized the record when she compared Dr. Eggerman's opinion to Plaintiff's reported response to treatment, as well as her daily activities. The ALJ stated: "[Plaintiff] testified that her depression is better than it has ever been, her medication helps and she feels better than she ever did . . . [Plaintiff] testified that her mental health medications help because prior to taking medication she was not getting out of the bed for quite a while; however, now she gets out of bed and feels better than she did. She also testified that her depression is better than it has ever been (testimony)." (AR, ECF No. 7-2 at PageID 50.) The ALJ concluded that Plaintiff's reported activities "suggest she is not quite as limited as alleged," and cited to Plaintiff's statements that included "going out with friends for dessert, riding a Ferris wheel downtown, shopping online, and preparing simple meals (testimony, 4E)." (*Id.*) The ALJ further explained: "[Plaintiff] testified she has no problems getting along with her parents, children and doctors. She uses the computer to shop online, engage in social media and uses her cell phone to access the Internet to engage in research (testimony)." (*Id.*)

---

[7] Significantly, Dr. Eggerman's treatment notes dated as early as September 2018 contain the same historical notations. (AR, ECF No. 7-9 at PageID 1148-49.) It is plain that any characterization that Plaintiff was experiencing a positive response to treatment relates to Plaintiff's functioning well before the relevant time period.

15

The Sixth Circuit recognizes that an ALJ may consider a claimant's "household and social activities" when evaluating complaints of disabling pain and mental symptoms. *Allen v. Comm'r of Soc. Sec.*, 74 F.3d 1240 (Table), 1996 WL 15651, *3 (6th Cir. 1996) (citing *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990)). However, the ALJ "may not take part of [Plaintiff's] testimony and disregard the rest." *Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003). Here, the hearing transcript shows that the ALJ disregarded significant portions of Plaintiff's testimony. Significantly, Plaintiff testified that her psychotropic medications helped her to get out of bed for only "a little bit of the day" and that she was "still struggling with a lot of other things." (AR, ECF No. 7-2 at PageID 92-93.) She estimated that she got up for only a few hours each day, due to pain and depression. (*Id.* at PageID 106.) With regard to spending time with others, Plaintiff testified that she had met some friends for dessert—but only on one occasion. (AR, ECF No. 7-2 at PageID 102.) She said that while she and her husband were dating they went downtown and rode the Ferris wheel—but only on one occasion. (AR, ECF No. 7-2 at PageID 108.) She explained that they had already known each other for twenty years and otherwise usually "just kind of hung out together at the house . . . and watched t[elevision] . . . ." (Id. at PageID 108-09.) Plaintiff also testified that although she did not have difficulty getting along with family or medical staff, she has "pretty much withdrawn [herself] from everyone." (AR, ECF No. 7-2 at PageID 101.) Finally, Plaintiff testified that she was able to use her phone to research information on the internet, but she said she needed to alternate "back and forth"

16

between her phone and watching television due to focus issues. (AR, ECF No. 7-2 at PageID 98.)

The ALJ's failure to acknowledge significant evidence that supports Plaintiff's subjective complaints, and her mischaracterization of evidence that was cited, signifies an impermissibly selective review of the record. *See Gentry*, 741 F.3d at 723-23 (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir.2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir.2008) (finding error where the ALJ was "selective in parsing the various medical reports")). The Court recognizes that the ALJ is not required to directly address each and every piece of evidence and finding in the record. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole must show that [she] implicitly resolved" any conflicts in the evidence. *Id.*

Here, the ALJ did acknowledge some of the abnormal findings and testimony in her earlier discussion of Plaintiff's symptoms and the medical evidence. (AR, ECF No. 7-2 at PageID 41-42, 45-46.) But, as discussed above, when the ALJ evaluated Dr. Eggerman's opinion she failed to acknowledge any of the abnormal findings that he documented. The ALJ also mischaracterized Dr. Eggerman's examinations, Plaintiff's response to treatment, and Plaintiff's reports of daily activities. Accordingly, the Court finds that the ALJ did not demonstrate that she implicitly resolved the evidentiary conflicts. Instead, the ALJ performed an impermissibly selective review of the record when she found that Dr. Eggerman's opinion was not persuasive.

17

In sum, the ALJ erred because her evaluation of Dr. Eggerman's opinion is not supported by substantial evidence. The ALJ's error can only be excused as harmless if it does not prejudice the claimant on the merits or deprive her of substantial rights. *Rabbers*, 582 F.3d at 654. The Court finds that the ALJ's error was not harmless because it prejudiced Plaintiff on the merits. Therefore, reversal is required.

## VI.  REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the opinion of Dr. Eggerman, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's

18

disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (ECF No. 9) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge